UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

BILLY LEE STINSON,

       Plaintiff,

    v.

NANCY A. BERRYHILL,

       Defendant.

Case No. 17-cv-01509-RMI

**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 25, 28

      Plaintiff Billy Lee Stinson seeks judicial review of an administrative law judge ("ALJ")

decision denying his application for benefits under Title XVI of the Social Security Act. Plaintiff's

request for review of the ALJ's unfavorable decision was denied by the Appeals Council.

(Administrative Record ("AR") 1-6.) The ALJ's decision is therefore the "final decision" of the

Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g),

1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (Docs. 8, 11) and

both parties have moved for summary judgment (Docs. 25, 28).[1] For the reasons stated below, the

court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for

summary judgment.

## LEGAL STANDARDS

      The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal

---

[1] The Reply was due May 18, 2018. No Reply was filed.

error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

Plaintiff received Supplemental Security Income ("SSI") based on disability as a child, pursuant to Title XVI of the Social Security Act ("the Act"). (AR 60-70.) Pursuant to Section 1614(a)(3)(H) of the Act, when Plaintiff turned 18 years old, the Social Security Administration ("the Agency") redetermined Plaintiff's eligibility for disability benefits under the rules for determining disability in adults. On December 19, 2012, the Agency found that Plaintiff was no longer disabled as of November 16, 2012. (AR 79-83.) Plaintiff requested and was denied reconsideration. (AR 87-88, 112-123, 124-126.) Plaintiff then requested a hearing before an ALJ. (AR 127-128.) The ALJ presided over a hearing on August 25, 2015. (AR 37-59.) The ALJ issued his decision on September 11, 2015, concluding that Plaintiff was not disabled as defined by the Act. (AR 31.) Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, (AR 1-6, 11-12,13-14), making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently requested judicial review. *See* 42 U.S.C. §§ 405(g) and 1383(c).

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that he has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.1. The ALJ must consider all evidence in the claimant's case record to determine disability (*see id.* § 416.920(a)(3)), and must use a five-

step sequential evaluation process to determine whether the claimant is disabled (*see id*. §

416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that

the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step

sequential evaluation, with an exception at Step One because of Plaintiff's age.  (AR 15-36.)

At Step One, the claimant bears the burden of showing he has not been engaged in

"substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. §

416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the

claimant will be found not disabled. *See id*. The ALJ did not do the analysis at Step One in this

case, stating that the step was not used for redetermining eligibility at age 18. (AR 19.)

At Step Two, the claimant bears the burden of showing that he has a medically severe

impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An

impairment is not severe if it is merely 'a slight abnormality (or combination of slight

abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'"

*Webb v. Barnhar*t, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The

ALJ found that Plaintiff suffered from the following severe impairments: hypohidrotic ectodermal

dysplasia, asthma, emphysema, a learning disorder, and borderline intellectual functioning.  (AR

20.)  The ALJ further found that Plaintiff suffered from the following non-severe medically

determinable impairments:  mitral valve prolapse, Kikuchi-Fujimoto syndrome, and rheumatic

fever.  (AR 20-21.)

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in

appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the

burden of showing his impairments meet or equal an impairment in the listing. *Id.* If the claimant

is successful, a disability is presumed and benefits are awarded. *Id.* If the claimant is unsuccessful,

proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not

have an impairment or combination of impairments that met or medically equaled one of the listed

impairments.  (AR 21.)

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC")

1    and then determine whether the complaint has the RFC to perform the requirements of his past

2    relevant work. *See id*. § 416.920(e) and 416.945. The ALJ assessed Plaintiff as having the RFC to

3    perform light work as defined in 20 C.F.R. 416.967(b) except that: Plaintiff must avoid moderate

4    exposure to pulmonary irritants, heat, and sunlight; he must avoid concentrated exposure to

5    hazards; he is limited to simple, routine, repetitive tasks; he is limited to no work involving

6    monetary transaction; he is limited to occasional decision-making; and he would need to take

7    approximately one random fifteen minute break per week. (AR 24.)

8           At Step Five, the ALJ must determine whether the claimant is able to do any other work

9    considering his RFC, age, education, and work experience. *See id*. § 416.920(g). If the claimant is

10   able to do other work, he is not disabled. The ALJ determined that Plaintiff has no past relevant

11   work. (AR 30.) The ALJ further found that based on Plaintiff's age, education, work experience,

12   and RFC, he was capable of making a successful adjustment to other work that exists in significant

13   numbers in the national economy. (AR 30-31.) The ALJ concluded Plaintiff had not been under a

14   disability, as defined in the Social Security Act, since his disability ended on November 16, 2012.

15   (AR 31.)

16                                        **DISCUSSION**

17   Analysis of Listing 12.05(C)

18          Plaintiff contends that the ALJ erred in failing to correctly analyze Listing 12.05(C) in Step

19   Three of the analysis. This Listing requires "[a] valid verbal, performance, or full scale IQ of 60

20   through 70 and a physical or other mental impairment imposing an additional and significant

21   work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 Section12.05(C)

22   (effective August 12, 2015 to May 23, 2016).

23          The entirely of the ALJ's analysis of Listing 12.05(C) is as follows:

24

25         Section 12.05 of the listed impairments requires (among other things) evidence of
           significantly subaverage general intellectual functioning with deficits in adaptive
26         functioning. The claimant's impairments do not satisfy these criteria. While cognitive
           testing revealed a verbal comprehension score of 66 (Exh. B14F/4), the record does not
27         support a finding that the claimant suffers from significantly subaverage general
           intellectual functioning. I note that the claimant received services in the special education
28         classroom for just ten percent of the school day (Exh. B2F/31, 48, 53), he attained a high

                                                    4

school diploma (Exh. B10F/3; Exh. B14F/3), and the claimant furnished adequate accounts of his medical history at consultative examinations (Exh. B10F/3; Exh. B14F/3). Furthermore, the claimant does not have appreciable deficits in adaptive functioning, for the claimant performs light housework (Exh. B6B/7; Exh. B8E/8; Hearing Testimony), he does his own laundry (Exh. B6B/7; Exh. B6E/6; Exh. B8E/8; Exh. B10F/3), the claimant regularly visits with friends (Exh. B6B/6; Exh. B8E/10), he shops for personal items (Exh. B6E/7; Bsh. B8E/9; Exh. B11F/4; Hearing Testimony), he goes fishing (Exh. B8E/10; Exh. b11F/4), and the claimant performed various odd jobs (Exh. B23F/8; Hearing Testimony). As such the claimant's impairments do not meet the criteria under listing 12.05.

(AR 22.)

The Ninth Circuit has explained the application of Listing 12.05 as follows:

Listing 12.05 . . . explains that "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.1 The listing further says that the level of severity for the intellectual disability impairment is met when any of four sets of additional requirements is satisfied. *See id.* The third of those four sets requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* § 12.05C.
Thus, Listing 12.05C has three main components: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation.

*Kennedy v. Colvin*, 738 F.3d 1172, 1175–76 (9th Cir. 2013).

After considering the parties' arguments, the court finds that the ALJ's analysis of Listing 12.05 lacked substantial evidence. In analyzing the application of the requirements of the introductory paragraph, the ALJ only addressed "significantly subaverage general intellectual functioning" portion. The ALJ noted that Plaintiff had a verbal comprehension score of 66, but found that the record did not support a finding that Plaintiff suffered from significantly subaverage general intellectual functioning. He supported that finding with three items from the record. The first was that Plaintiff "received services in the special education classroom for just ten percent of the school day." (AR 22.) This is based on reports that Plaintiff spent ten percent of the time outside the regular class. (AR 390.) Immediately above that reference, however, the form in question indicates that all special education services are not provided at Castle Rock School,

because it is a charter school. *Id*. Thus, the form does not indicate how much special education was actually provided. The second item from the record relied on by the ALJ for the finding that Plaintiff did not suffer from significantly subaverage general intellectual functioning was that he attained a high school diploma. (AR 22.) This finding is misleading, however, because the diploma was received through special education resources at a charter school, where Plaintiff's last individualized education plan dated 6/4/2012 indicated that he was reading at a 4/5th grade level. The ALJ also does not acknowledge that Plaintiff did not pass the California High School exit exam. Thus, there was a lack of substantial evidence for two of the three findings relied on by the ALJ in concluding that Plaintiff did not suffer from significantly subaverage general intellectual functioning. Further, the ALJ failed to address both Plaintiff's adaptive functioning and the issue of whether the evidence showed onset of the impairment before age 22. The court finds that remand is required to allow the ALJ to analyze the application of Listing 12.05.

Step Five Analysis

Plaintiff contends that the ALJ erred in failing to reconcile parts of the vocational expert's ("VE") testimony that conflicted with the information contained in the *Dictionary of Occupational Titles* ("*DOT*"). The ALJ's decision states that "[p]ursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Plaintiff argues that the ALJ was not correct, because the jobs identified by the VE were not consistent with the DOT and the Plaintiff's RFC, and the conflicts were not resolved.

As set forth above, Plaintiff's RFC as found by the ALJ's included "simple routine repetitive tasks; the claimant is limited to no work involving monetary transactions; and the claimant is limited to occasional decision-making." (AR 24.) The vocational witness testified that Plaintiff could perform the jobs of mail clerk, office helper and counter clerk, and the ALJ adopted that testimony in his decision. (AR 30-31.) Plaintiff, however, argues that an examination

6

of the three jobs reveals significant conflict between his RFC and these jobs as described in the DOT. He further argues that the ALJ did not address this conflict. The court finds merit to Plaintiff's argument.

The description for the counter clerk job, found at DPT 249.366-010, includes "[p]ays customer amount due on money order warrant. Keeps records of receipts and disbursements and balances cash on hand at end of day. May be assigned to process money orders only and be designated Money-Order Clerk (tel. & tel.)"[2] This obviously conflicts with Plaintiff's RFC restriction to "no work involving monetary transactions." Additionally, the reasoning level for counter clerk is given as R4 in the Definition Trailer.[3] The Components of the Definition Trailer explain that there are six levels of reasoning development assigned to each job in the DOT. Reasoning level 4 is described as

> [a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form. (Examples of rational systems include: bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation.)

This far exceeds the simple, routine, repetitive tasks with occasional decision making to which Plaintiff is limited by his RFC. The ALJ did not address this conflict.

The same is true as to the mail clerk position, found at DOT 209.687.026. This position requires a reasoning level of three, which requires the worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations."[4] Again, the ALJ did not explain the apparent conflict with the limitations of Plaintiff's RFC.

---

[2] https://occupationalinfo.org/24/249362010.html
[3] https://occupationalinfo.org/appendxc 1.html#III
[4] https://occupationalinfo.org/appendxc_1.html#III

Finally, the position of office helper, found at DOT 239.567-010, demands a reasoning level of two, which requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."[5]  As with the other two positions, this reasoning level exceeds the "simple, routine, repetitive tasks with occasional decision making" to which Plaintiff is limited by his RFC, and the ALJ provides no explanation of the apparent conflict.

When there is an apparent conflict between the vocational expert's testimony and the DOT, the ALJ is required to reconcile the inconsistency. Pursuant to Social Security Ruling (SSR) 00-4p, the ALJ has an affirmative duty to "ask the expert to explain the conflict and 'then determine whether the vocational expert's explanation for the conflict is reasonable' before relying on the expert's testimony to reach a disability determination." *Rounds v. Commissioner Social Sec. Admin.*, 807 F. 3d 996, 1003 (9th Cir. 2015), citing *Zavalin v. Colvin*, 778 F.3d at 842, 846 (9th Cir. 2015), and *Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007).  The transcript of the hearing contains no questioning of the vocational expert regarding the apparent conflict between his testimony and the DOT as applied to Plaintiff's RFC.

Defendant reviews the record and argues that it shows that Plaintiff had the ability to perform jobs involving reasoning at level 2 or level 3, as well the counter clerk job requiring some exchange of money.  The court, however, is precluded from speculating as to the ALJ's thought processes. "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ--not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citations omitted).  Where, as here, there is

---

[5] https://occupationalinfo.org/appendxc_1.html#III

8

apparent conflict between the limitations in the claimant's RFC as found by the ALJ and the requirements of the jobs the ALJ has found the claimant capable of performing, the court has no option but to remand for the ALJ to explain the apparent conflict.

It is well established that "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [for further proceedings]." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). On the other hand, a district court may modify or reverse a decision by the Commissioner, "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). Generally, remand with instructions to award benefits has been considered when it is clear from the record that a claimant is entitled to benefits. *Id.* The credit-as-true doctrine provides that when "there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony . . . [instead] we will . . . take that testimony to be established as true." *Varney v. Sec'y of Health & Human Servs.,* 859 F.2d 1396, 1401 (9th Cir. 1988) ("*Varney II*").

In the instant case, it cannot be said that there are no outstanding issues that must be resolved before a proper disability determination can be made. The outstanding issues that must be resolved are those in the ALJ's Step 3 and Step 5 analysis discussed above.  The court will therefore remand the case for further consideration by the ALJ.

## CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is GRANTED and Defendant's motion for summary judgment is DENIED.  The case is

United States District Court
Northern District of California

remanded for further proceedings consistent with this order.

A separate judgment will issue.

**IT IS SO ORDERED.**

Dated:  August 7, 2018

_____
ROBERT M. ILLMAN
United States Magistrate Judge